# EXHIBIT "D"

Home Page

Contact > Parliamentary Office

## Contacts

**Parliamentary Office**
**Constituency Office**
**Satellite Office – Powell River**
**Satellite Office – Sechelt**
**Privacy Statement**

# John ★ Reynolds



### Parliamentary Office

| Address | |
|---|---|
| Place | House of Commons |
| Address | 04 Justice Building |
| City / Prov. | Ottawa, Ontario |
| Postal Code | K1A 0A6 |

| Contact Information | |
|---|---|
| Telephone | (613) 947-4617 |
| Fax | (613) 947-4620 |

Contact: Webmaster

Site Design by CMI Inc.

# EXHIBIT "E"

John C. Crosbie

## The Honourable John C. Crosbie

The Honourable John C. Crosbie, P.C., Q.C., served the people of Newfoundland and Canada for 28 years at the municipal, provincial, and federal levels of government. Mr. Crosbie became Minister of Fisheries and Oceans in 1991. He took this post very seriously and, in 1992, launched a buy-back of commercial Atlantic salmon licenses in Newfoundland and Labrador and imposed a moratorium on the Newfoundland commercial fishery; both bold and politically-courageous actions. In 1998, the seventh anniversary of the moratorium, only 100 fishermen in Newfoundland and 200 in Labrador held commercial licenses.

Mr. Crosbie also initiated an education and public awareness program (EPAP) to inform Atlantic Canadians of the importance of the recreational fishing industry's role in conserving fish and a Federal-Provincial Conservation and Enhancement Agreement for each Atlantic province to improve the health of wild Atlantic salmon populations. The Atlantic Salmon Federation implemented EPAP, a 5.7 million dollar program funded by the Atlantic Canada Opportunities Agency (ACOA), in cooperation with the Department of Fisheries and Oceans.

One of the most successful components of EPAP is the "Fish Friends" program which ASF and its regional councils continue to delivery. "Fish Friends" educates elementary students throughout the salmon's range.
It is an enduring tribute to John Crosbie's commitment to conservation.



# EXHIBIT "F"

# Global Empire Investments & Holdings, LLC

5823 Southwest Freeway, Suite 206, Houston, Texas 77057
Phone: 713-660-9300, Fax: 713-626-6083

June 7, 2005

Mr. Arch A. Moore, Jr.
President
Progressive Mining, LLC
West Virginia

Re: $200,000,000 Loan

Dear Mr. Arch A. Moore, Jr:

Based on preliminary review of your funding request or application, we would consider
pursuing funding subject to the following parameters. These parameters may be subject to
change and modifications as thorough review and analysis of your request are concluded.

1.   **APPLICANT:**  Progressive Mining, LLC,  or a single purpose entity or entities
     approved by Lender ("Applicant")

2.   **LENDER:**   A Single Purpose Entity ( SPE or "Lender").

3.   **LOAN AMOUNT:**
     The total Loan Amount shall be a maximum of $200,000,000 (the
     "Credit Facility" or "Loan").

4.   **PURPOSE:**  To acquire all assets of a certain coal mine – Progressive Minerals LLC
     located in One west Virginia (the "Project").

5.   **TERMS:**   The Loan Term shall be one (1) year with up to four renewals. It shall
     begin on the date on which all conditions precedent to the loan have
     been satisfied and the necessary loan documents have been executed
     ("Closing Date") and shall terminate five (5) years from the Closing
     Date or such other terms approved by Lender after completion of
     underwriting. The loan shall be non-recourse and may be prepaid
     without prepayment penalty. The loan will remain active for 5 years
     provided the Applicant continues to be profitable and the interest
     payments are paid on timely basis.

1– Term Sheet

6.  **INTEREST RATE:**

The Loan shall have interest rate of 5.5%. Interest only shall be payable on quarterly basis ( at the end of each quarter).

7.  **COLLATERAL:** First lien on all assets of the Project. Lender is aware of certain equipment loan which has a first lien in favor of a certain lender - Caterpillar Corporation. Applicant has requested assumption of such loan and Lender shall give full consideration to approve this request.

8.  **MISCELLANEOUS:**

In order to complete the Loan, Global Empire Investments & Holdings, LLC ("Global") shall come stand by letter of credit ("SLC") to be issued to the SPE to procure the Loan. Upon execution of this Term Sheet Applicant shall pay Global seven hundred and fifty thousand dollars ($750,000) for processing the Loan. The $750,000 shall be payable as follows: $250,000 upon signature and $500,000 once a commitment Letter is issued to undersigned. Global shall issue a guaranty to the Applicant, that if the loan is not completed in one hundred and twenty (120) days after receipt of the seven hundred and fifty thousand dollars ($750,000), Global shall return the seven hundred and fifty thousand dollars ($750,000) without interest or deductions. An extension of time if needed could be made for up to 60 days.

9.  **INDUCEMENT:**

As an inducement for providing the loan, Lender shall share in the profit of the Project as follows:
Forty five percent (45%) of ownership interest in the Project.

10. **FEES:**

Origination fee of 5% of the Loan amount shall be due and payable at closing, unless otherwise agreed to by Lender.

11. **EXPENSES:**

Applicant shall be responsible for all reasonable expenses associated with the Loan. This includes but not limited to costs relating to legal and other third party advisers, reviews, processing, legal filings and other customary costs.

12. **PARTICIPANT:**

2- Term Sheet



Global may sell or assign part or all of this Loan to certain participants if and when necessary. Applicant agrees to co-operate with Global and execute documents necessary to effect such process. The Participants shall include but not limited to: (I) any financial institution; or (II) any U.S. subsidiary of a foreign financial institution; or (III) any money manager (domestic or foreign); or (IV) any major "Hedge or Pension Fund" (domestic or foreign); or (V) any foreign corporation (public or private). After closing, Global shall give the Applicant, the first right of refusal for any sell or assignment of the Loan.

13.   **DUE DILIGENCE:** Global shall begin its due diligence upon receipt of all or some of the following:

1. All information regarding the Project.
2. Copies of incorporation papers of the Applicant.
3. Updated business plan.
4. Cash draw down schedule.
5. A complete list of managers, shareholders, options and warrants issued and outstanding by date and conditions.
6. All Joint Venture, loan and investment agreements between the Applicant and other entities.
7. All Consulting agreements pertinent to this Loan.
8. Management compensation.
9. Applicant minutes of board of directors if any.
10. List of all existing, pending and contingent liabilities of the Applicant and the Project
11. Any other documents, information or materials as Global may require for its underwriting. The request shall be in writing and added as addendum to this paragraph.
12. The approval or disapproval of the due diligence shall be subject to Global's sole discretion.

**14. CLOSING DATE:**

Closing Date shall be a date set in a certain commitment which shall be that date on which all conditions precedent to the loan have been satisfied and the necessary loan documents have been executed. In 45 days Lender shall disburse $25,000,000 to facilitate the acquisition. Another $25,000,000 shall be disbursed 30 days later and the remaining $137,500,000 will be held back until due diligence is completed and disbursed in 120 days.

3- Term Sheet

6/27/05

**THIS TERM SHEET COMPRISES A STATEMENT OF PRESENT INTENT AND IS NOT AN OFFER TO LEND ANY MONEY NOR A COMMITMENT SO TO LEND.** Global contemplated considering the application for funding and issuing a commitment with terms and conditions contained herein and upon the receipt by Global of necessary documents for its credit underwriting, as well as any fees stipulated in the section titled "Fees" and " Miscellaneous".

This Term Sheet is CONFIDENTIAL and made only for the Applicant and NOT for any other third party. Applicant hereby specifically agrees that Global and Global's affiliates shall incur no liability whatsoever to any one relying on this document, to the Applicant or to any of the Applicant's business associates by issuance of this Term Sheet; and Applicant further agrees to protect and indemnify Global and Global's affiliates from any claim by anyone or liability to anyone growing out of this Term Sheet.

This Term Sheet shall be governed by and construed under the laws of the State of Texas. If the court having jurisdiction of the subject matter hereof shall declare any part of this Term Sheet invalid, such declaration shall not affect the balance of the Term Sheet hereof. It is mutually agreed to that all legal proceedings arising out of or relating to this Term Sheet, or breach thereof, shall be conducted in Houston, Texas which shall be the exclusive venue for initiation of any and all such legal proceedings.   Each party understands that each has a constitutional right of due process which guarantees that each party must have minimum contacts with the State of Texas prior to the exercise of in personam jurisdiction over any party and said constitutional right is hereby expressly waived by each party.

This Term Sheet is delivered to the Applicant with the understanding that neither it, nor its substance  shall be directly or indirectly disclosed to  any third party for any purpose including obtaining a  competing loan, or  to directly or indirectly enter into any loan or financing agreement or to directly or indirectly shop/solicit loan, financing or investment with other entities,  except where disclosure is required by law.

Time is of the essence and this Term Sheet shall expire at 4:00 p.m. Eastern time on June 24, 2005 and may not be eligible for reconsideration or extension without penalty. Please acknowledge your acceptance of this Term Sheet in the space provided and return the same

4-Term Sheet



to Global by US First Class mail and facsimile. The acceptance may be executed in counterparts and signed facsimile copies shall have the same force and effect as signed original documents.

Sincerely,

Mohammed Harood Rashid
President & C.E.O

Accepted By: Progressive Mining, LLC

BY: _____  Date: 6/24/05
Arch A. Moore, Jr., President

S- Term Sheet

Confidential

# EXHIBIT "G"

# Corporate Guaranty
## $750,000
## Houston Texas
## June 23, 2005

**1. Guaranty:**

Global Empire Investments & Holding, LLC ("Global") a corporation formed under the laws of the State of Delaware with principal place of business at 5821 Southwest Freeway, Suite 500, Houston, TX 77057 hereby guarantees to pay Progressive Mining, LLC or Holder, the sum of seven hundred and fifty thousand dollars ($750,000) if a certain loan to Progressive Mining, LLC (terms and conditions herein attached as exhibit "A") does not close in one hundred and twenty (120) days and a possible extension of sixty (60) days.

This Guaranty is subject to Global receiving seven hundred and fifty thousand dollars ($750,000) in good and ready funds.

**2. Notices:**

Any and all other notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed properly given and effective upon being (a) personally delivered, (b) deposited with an overnight courier service in time for and specifying overnight delivery or (c) deposited in the United States mail, postage prepaid, certified with return receipt requested to the other party at the address of such other party set forth in the first paragraph hereof. All such notices shall be deemed delivered on the date of delivery if sent by personal delivery, the next business day if sent by overnight courier service and on the date of delivery or five (5) days after being deposited in the United States Mail if sent by registered or certified mail.

Attorneys' Fees: Time is of the essence of this Guaranty. If any payment under this Guaranty is collected by law or through an attorney, Maker shall further pay to Holder, in addition to all other amounts payable hereunder, reasonable attorneys' fees, not to exceed ten percent (10%) of the amount of principal and interest owing hereunder, plus court.

**3. Representation by Global:**

Global represents and covenants that:

(a)     Global is now, and during the term of this Guaranty will remain, a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of the State where it is organized;

(b)     The execution, delivery and performance of this Guaranty have been duly and validly authorized by all necessary corporate action on the part of Global. This Agreement is a valid and binding obligation of Global, endorsable against it in accordance with its terms.

**4. Governing Law:**

*Holder of Progressive*

This guaranty and the rights and obligations of ~~Wheeling~~ and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of

1

Texas, and this guaranty is binding upon the undersigned, the executors, administrators, successors or assigns of the undersigned, and shall inure to the benefit of Holder, its successor and assigns. If the court having jurisdiction of the subject matter hereof shall declare any part of this guaranty invalid, such declaration shall not affect the balance of the guaranty hereof. It is mutually agreed to that all legal proceedings arising out of or relating to this guaranty, or breach thereof, shall be conducted in Houston, Texas which shall be the exclusive venue for initiation of any and all such legal proceedings. Each party understands that each has a constitutional right of due process which guarantees that each party must have minimum contacts with the State of Texas prior to the exercise of in personam jurisdiction over any party and said constitutional right is hereby expressly waived by each party.

**5. Miscellaneous:**

This Guaranty may not be changed orally, but only by an agreement in writing signed by Global and approved by Holder.

IN WITNESS WHEREOF, the undersigned has executed this guaranty as of the day and year first above written.

Guarantor:
Global Empire Investments & Holdings, LLC

_____
Muhammad Haroon Rashid, President & C.E.O.

DATED: *June 23, 2005*

STATE OF TEXAS
COUNTY OF HARRIS

SUBSCRIBED AND SWORN BEFORE ME THIS 23rd DAY OF June, 2005.

_____
NOTARY PUBLIC

GERALD D HENDRIX
Notary Public, State of Texas
My Commission Expires
AUGUST 8, 2005

JUN-27-2005 01:13 FROM:     TO:17707256386     P.5/7

## Corporate Guaranty
## $750,000
## Houston Texas
## June 23, 2005

**1. Guaranty:**
Global Empire Investments & Holding, LLC ("Global") a corporation formed under the laws of the State of Delaware with principal place of business at 5821 Southwest Freeway, Suite 500, Houston, TX 77057 hereby guarantees to pay Progressive Mining, LLC or Holder, the sum of seven hundred and fifty thousand dollars ($750,000) if a certain loan to Progressive Mining, LLC (terms and conditions herein attached as exhibit "A") does not close in one hundred and twenty (120) days and a possible extension of sixty (60) days.

This Guaranty is subject to Global receiving seven hundred and fifty thousand dollars ($750,000) in good and ready funds.

**2. Notice:**
Any and all other notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed properly given and effective upon being (a) personally delivered, (b) deposited with an overnight courier service in time for and specifying overnight delivery or (c) deposited in the United States mail, postage prepaid, certified with return receipt requested to the other party at the address of such other party set forth in the first paragraph hereof. All such notices shall be deemed delivered on the date of delivery if sent by personal delivery, the next business day if sent by overnight courier service and on the date of delivery or five (5) days after being deposited in the United States Mail if sent by registered or certified mail.

**Attorneys' Fees:** Time is of the essence of this Guaranty. If any payment under this Guaranty is collected by law or through an attorney, Maker shall further pay to Holder, in addition to all other amounts payable hereunder, reasonable attorneys' fees, not to exceed ten percent (10%) of the amount of principal and interest owing hereunder, plus court.

**2. Representation by Global:**
Global represents and covenants that:
(a)     Global is now, and during the term of this Guaranty will remain, a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction of the State where it is organized;
(b)     The execution, delivery and performance of this Guaranty have been duly and validly authorized by all necessary corporate action on the part of Global. This Agreement is a valid and binding obligation of Global, enforceable against it in accordance with its terms.

**4. Governing Law:**
This guaranty and the rights and obligations of Wheeling and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of

1

P.004/005     (FAX)713 839 8977

JUN-23-2005(THU)12:04

EXHIBIT "H"

# BB&T

BB&T WIRE TRANSFER OPERATIONS                         06/29/2005

2735301
ARCH MOORE
PO BOX 250
MOUNDSVILLE            WV 26041-0250

WE HAVE COMPLETED THIS WIRE TRANSFER REQUEST.  YOUR BB&T ACCOUNT
HAS BEEN DEBITED FOR THE NET AMOUNT SHOWN BELOW.

TRN DATE      20050629                TRN NUM    00005872

AMOUNT              200,000.00     ACCOUNT # DDA - 5272640337
REFERENCE #
DATE                06/29/2005
TIME                14:18:36

ORIGINATOR                  ARCH MOORE
                            511 7TH ST
                            MOUNDSVILLE        WV 26041-2126

BENEFICIARY BANK            BANK OF AMERICA, N.A., TX
BENEFICIARY BANK #          111000025

BENEFICIARY NAME            GLOBAL EMPIRE INVESTMENTS & HOLDING
BENEFICIARY ACCOUNT         005778146903
ORIGINATING BANK INFORMATION

THANK YOU FOR BANKING AT BB&T.  IF YOU HAVE ANY QUESTIONS
CONCERNING THIS WIRE TRANSFER, PLEASE CALL YOUR LOCAL BRANCH.

IEMBER FDIC

# BB&T

**BB&T WIRE TRANSFER OPERATIONS**

06/30/2005

2735301

ARCH MOORE
PO BOX 250
MOUNDSVILLE                    WV 26041-0250

WE HAVE COMPLETED THIS WIRE TRANSFER REQUEST.   YOUR BB&T ACCOUNT
HAS BEEN DEBITED FOR THE NET AMOUNT SHOWN BELOW.

TRN DATE        20050630              TRN NUM    00003766

AMOUNT                      50,000.00       ACCOUNT # DDA - 5272640337
REFERENCE #
DATE                        06/30/2005
TIME                        11:29:10

ORIGINATOR                  ARCH MOORE ON BEHALF OF BISON,LLC
                            511 7TH ST
                            MOUNDSVILLE        WV 26041-2126

BENEFICIARY BANK            BANK OF AMERICA, N.A., TX
BENEFICIARY BANK #          111000025

BENEFICIARY NAME            GLOBAL EMPIRE INVESTMENTS & HOLDING
BENEFICIARY ACCOUNT         005778146903
ORIGINATING BANK INFORMATION

THANK YOU FOR BANKING AT BB&T.   IF YOU HAVE ANY QUESTIONS
CONCERNING THIS WIRE TRANSFER, PLEASE CALL YOUR LOCAL BRANCH.

MEMBER FDIC

# EXHIBIT "I"

# GLOBAL EMPIRE
## INVESTMENTS & HOLDINGS, LLC

### PHONE: 713 669-9900 - FAX: 713 839-8977

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: *Arch A. Moore, Jr* | FROM: *Gerald Hendrix* |
| COMPANY: *Progressive Minerals, LLC* | DATE: *7/21/05* |
| FAX NUMBER: *304-845-5901* | TOTAL NO. OF PAGES INCLUDING COVER: *7* |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: | YOUR REFERENCE NUMBER: |

☐ URGENT   ☒ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

# Global Empire Investments & Holdings, LLC
5821 Southwest Freeway, Suite 500, Houston, Texas 77057
Phone: 713-669-9900, Fax: 713-839-8985

Jul 14, 2005

Mr. Arch A. Moore, Jr.
President
Progressive Minerals, LLC
Hubb's Building
Suite 400
511 Seventh Street
Moundsville, West Virginia 26041

Re: $200,000,000 Loan

Dear Mr. Arch A. Moore, Jr:

We at Global Empire Investments & Holdings, LLC ( hereinafter referred to as "Global" or the "Lender" ) are pleased to advise you of our commitment (hereinafter referred to as the "Commitment" or "Commitment Letter", or "Commitment Agreement") to provide financing for the project referenced herein. This commitment supercedes all previous communications and shall be subject to the following terms and conditions. These terms and conditions may be subject to change and modifications as certain elements of the funding requirements are received, reviewed and completely underwritten.

## A. BASIC TERMS

1. Borrower/Applicant:
   Progressive Minerals, LLC, of Moundsville, West Virginia or a single purpose entity, (hereinafter referred to as the , "Borrower" or "Applicant").

2. Lender:
   Global Empire Investments & Holdings, LLC. (Delaware limited liability company) or assignee or a Single Purpose Entity ("Global ", "SPE" or "Lender").

3. Loan Amount:
   The total Loan Amount shall be $200,000,000 (the "Credit Facility" or "Term Loan").

4. The Loan Purpose:
   To acquire all assets of a certain coal mine - according to Applicant, the coal mine is presently mining one million (1,000,0000) tons of high quality coal per year as Red Fox Surface Mine near Bishop, Virginia (the "Project"). This entity is a wholly owned



sub-chapter "S" subsidiary of James C. Justice Companies, Inc. (the Seller").

5. Terms:

The Loan Term shall be one (1) year with up to four renewals. It shall begin on the date on which all conditions precedent to the loan have been satisfied and the necessary loan documents have been executed ("Closing Date") and shall terminate five (5) years from the Closing Date or such other terms agreed to by Lender and Applicant after completion of underwriting. The loan shall be non-recourse and may be prepaid without prepayment penalty. The loan will remain active for 5 years provided the Applicant continues to be profitable and the interest payments are paid on timely basis.

6. Interest Rate:

The Loan shall have interest rate of 5.5%. Interest only shall be payable on quarterly basis ( at the end of each quarter).

7. Collateral:

First lien on all assets of the Project. Lender is aware of certain equipment loan which has a first lien in favor of a certain lender - Caterpillar Corporation. Applicant has requested assumption of payments to Caterpillar and other finance companies and Lender shall give full consideration to approve this request. In addition, Seller, at its cost, shall complete the construction of a new load-out facility on the said property or Project as part of sale agreement with the Applicant. According to Applicant, the load-out facility shall save over $4.00 per ton in loading operating cost.

8. MISCELLANEOUS:

In order to complete the Loan, Global Empire Investments & Holdings, LLC ("Global") shall cause stand by letter of credit ("SLC") to be issued to the SPE to process the Loan. It was agreed to that upon execution of the Term Sheet, Applicant shall pay Global seven hundred and fifty thousand dollars ($750,000) for processing the Loan. The $750,000 shall be payable as follows: $250,000 upon signature and $500,000 once a Commitment Letter is issued to undersigned.     Global shall issue a guaranty to the Applicant, that if the loan is not completed in one hundred and twenty (120) days after receipt of the seven hundred and fifty thousand dollars ($750,000), Global shall return the seven hundred and fifty thousand dollars ($750,000) without interest or deductions. An extension of time if needed could be made for up to 60 days. Applicant has paid $250,000 to Global and additional $500,000 is due upon receipt of this Commitment Letter.

9. INDUCEMENT:

As an inducement for providing the loan, Lender shall share in the profit of the Project as follows:
Forty five percent (45%) of ownership interest in the Project including its value and its profits. In the event that Lender chose to sell any part of its ownership of Project, Applicant shall have the first right of refusal to purchase such.

## B.   OTHER TERMS AND CONDITIONS:

1.   **Closing Date:**     *15th aug.*

Closing Date is set for August ~~16~~, 2005 or that date on which all conditions precedent to the loan have been satisfied and the necessary loan documents have been executed. On August ~~16~~, 2005, Lender shall disburse $25,000,000 to the Applicant to facilitate the *aug.* acquisition of the Project. Another $25,000,000 shall be disbursed on September ~~16~~, 2005 to the Applicant and the remaining $137,500,000 will be held back until due diligence is completed and disbursed within the 120 days. An extension of time if needed could be made for up to 60 days. If the loan is not completed in one hundred and twenty (120) days after receipt of the seven hundred and fifty thousand dollars ($750,000), Global shall return the seven hundred and fifty thousand dollars ($750,000) without interest or deductions. An extension of time if needed could be made for up to 60 days. If the due diligence is not completed after additional 60 days of extension, lender shall disburse additional $25,000,000 to Applicant to continue the due diligence.

2.   **Conditions Precedent to Closing and Funding:**
   a.   Satisfactory underwriting of the Project.
   b.   Execution of all Loan and security documents by the proper entities.
   c.   Receipt of all documents requested (on the Term Sheet and other communiqués).
   d.   Receipt of a certain independent analysis report from a professional entity like Marshall Miller & Associates, to-wit Weir Industries of the State of Illinois.
   e.   Receipt of confirmation that there is no material adverse change in the financial condition of the Applicant.
   f.   Receipt of confirmation that there is no pending or threatened litigation known to Applicant, or their counsel, against the Applicant, which if decided unfavorably would cause a material adverse change to the Loan or the financial condition of the Applicant.
   g.   Receipt of satisfactory evidence that the Project is in compliance with all local, State, Federal including environmental agencies

## C.   ADDITIONAL TERMS AND CONDITIONS:

1.   **Costs:**

Applicant shall be responsible for all reasonable expenses associated with the Loan. These expenses shall not exceed $200,000 without mutual approval of Lender and Applicant.

2.   **Loan Documents:**

It is the commitment and obligation of the Applicant to furnish all documents deemed necessary by the Lender for its underwriting. All documents shall be in form and content acceptable to the Lender and its legal counsel. Applicant acknowledges and agrees that facsimile reproductions of executed or certified documents, including this Commitment



Letter and all other statements, shall have the same use, force and effect as the original executed documents. In addition, Applicant agrees to provide the Lender with the original of all executed or certified documents within a reasonable time following the facsimile transmittal.

3. **Financial Information:**
Commencing with the execution of this Commitment Letter and during the term of the Loan, Applicant shall provide to the Lender all documents relating to the Loan. These shall include, but not be limited to:
   b. All documents requested in the Term Sheet.
   b. Applicant also agrees to make its books and records of Progressive Minerals, LLC available for inspection by the Lender during the term of the loan. Applicant agrees to provide any additional information or verifications reasonably requested by the Lender.

3.a. **Financial Condition Warranty:**
Applicant warrants that the financial information submitted to the Lender is accurate and complete, and that all charges payable with respect to the purchase of the Project are current and not in default.

4. **Additional Information:**
Prior to Closing, it is the commitment and obligation of the Applicant to supply expeditiously, any additional information, documents, or verifications that the Lender or its counsel may reasonably deem necessary, which shall remain confidential and relate to the Loan closing.

5. **Waiver:**
The Lender shall not be deemed to have waived any of the terms and conditions hereof except in writing signed by an officer of the Lender and delivered to the Applicant.

6. **Subordinate Financing:**
Except as provided herein, the Applicant shall not be permitted to have any other mortgages, liens, or encumbrances, with the exception of the Caterpillar Equipment financing contracts, on the Project without the prior written consent of the Lender. Written consent may be granted or withheld in the Lender's sole discretion. Lender's consent shall not be unreasonably withheld.

7. **Entire Agreement:**
Any statements, agreements, or representations, oral or written, which may have been made either by the Lender or by any employee, agent, or broker acting on the Lender's behalf with respect to this Commitment, and all prior agreements and representations in respect to this Commitment and the Project are merged herein so that this Commitment shall contain the entire agreement with respect to the Loan. The provisions hereof



Page 4 of 6

supersede any contrary provisions in any agreement executed by the Applicant and the Lender. No provisions hereof may be modified, amended, or waived, other than in writing signed by both the Applicant and the Lender.

8. **Fees.**

Origination fee of 5% of the Loan amount shall be due and payable at closing, unless otherwise agreed to by Lender. Also a finder's fee of $2,500,000 shall be withheld from the Loan to pay one Fred Cooper per Applicant's memo dated June 29, 2005. A settlement document at closing shall show that these expenses/fees are direct expenses from the Applicant.

9. **Not a Joint venture:**

Notwithstanding anything to the contrary herein contained, the Lender, by making this Commitment or by any action taken pursuant hereto, will not be deemed a partner or joint venture with the Applicant and the Applicant will indemnify and hold the Lender harmless from any and all damages resulting from such a construction of the parties and their relationship.

10. **Participants:**

For the purpose of this Loan, Lender may participate the Loan to one or several entities. Participants shall include: (I) any US, Canadian or European Bank; or (II) any U.S., Canadian or European subsidiary of a foreign banking institution; (III) any U.S., Canadian or European bank's subsidiary, (IV) any institutional money manager (domestic or foreign); (V) any major "Hedge Fund" (domestic or foreign); (VI) any foreign corporation (public or private); (VII) any U.S., Canadian or European accredited investor (person or institution).

11. **Assignment:**

Global may assign or sell any or all portions of this commitment at any time without Applicant's consent, however, applicant shall be advised as to whom the said party is and such assignment shall not relieve Global of its obligation under the Commitment. Applicant agrees and commits to co-operate with Global to execute documents necessary to effect such process. Applicant can assign its rights under this Commitment only to those entities approved by Global, which approval shall not be unreasonably withheld or delayed.

12. **Governing Law:**

This Commitment shall be governed by and construed under the laws of the State of Texas. If the court having jurisdiction of the subject matter hereof shall declare any part of this Commitment invalid, such declaration shall not affect the balance of the Commitment hereof. It is mutually agreed to that all legal proceedings arising out of or relating to this Commitment, or breach thereof, shall be conducted in Houston, Texas which shall be the exclusive venue for initiation of any and all such legal proceedings.



Page 5 of 6

Each party understands that each has a constitutional right of due process which guarantees that each party must have minimum contacts with the State of Texas prior to the exercise of in personam jurisdiction over any party and said constitutional right is hereby expressly waived by each party.

### 13. No Shopping/Soliciting:

Applicant hereby acknowledges and represents that upon execution of this Commitment Letter, Applicant shall be working solely with Global to procure the financing referenced herein and agrees that Applicant's principals and affiliates shall not attempt to arrange financing from or through any party other than Global. This Commitment Letter is delivered to the Applicant with the understanding that neither it, nor its substance shall be directly or indirectly disclosed to any third party for any purpose including obtaining a competing loan, or to directly or indirectly enter into any loan or financing agreement or to directly or indirectly shop/solicit loan, financing or investment with other entities, except where disclosure is required by law.

### 14. Indemnification:

Applicant hereby specifically agrees that Global and Global's affiliates shall incur no liability whatsoever to Applicant or any of Applicant's associates by issuance of this Commitment; and Applicant further agrees to protect and indemnify Global and Global's affiliates from any claim by anyone or liability to anyone growing out of this Commitment Letter.

Unless executed, accepted and delivered to Global, this Commitment shall expire at 5 p.m. Eastern United States of America time on July 22, 2005 and may not be eligible for reconsideration without penalty. Please acknowledge your acceptance of this Commitment Letter in the space provided and return the same to Global by facsimile and US Mail. This Commitment Letter may be executed in counterparts and a signed facsimile copy shall have the same effect and force as a signed original document.

Sincerely,

DATE: July 21, 2005

Mohammad Haroon Rashid
President & C.E.O

Accepted By: Progressive Mining, LLC

BY: _____    Date: July 21, 2005

Arch A. Moore, Jr., President

Page 6 of 6

**EXHIBIT "J"**

# BB&T

BB&T WIRE TRANSFER OPERATIONS                    07/26/2005

2735301

ARCH MOORE
PO BOX 250
MOUNDSVILLE                    WV 26041-0250

WE HAVE COMPLETED THIS WIRE TRANSFER REQUEST.  YOUR BB&T ACCOUNT
HAS BEEN DEBITED FOR THE NET AMOUNT SHOWN BELOW.

TRN DATE        20050726              TRN NUM    00004260

AMOUNT                    500,000.00      ACCOUNT # DDA - 5272640337
REFERENCE #
DATE                        07/26/2005
TIME                        13:55:36

ORIGINATOR                    ARCH MOORE
                              511 7TH ST
                              MOUNDSVILLE        WV 26041-2126

BENEFICIARY BANK              BANK OF AMERICA, N.A., TX
BENEFICIARY BANK #            111000025

BENEFICIARY NAME              GLOBAL EMPIRE INVESTMENT & HOLDING
BENEFICIARY ACCOUNT           005778146903
ORIGINATING BANK INFORMATION

THANK YOU FOR BANKING AT BB&T.  IF YOU HAVE ANY QUESTIONS
CONCERNING THIS WIRE TRANSFER, PLEASE CALL YOUR LOCAL BRANCH.

MEMBER FDIC



**EXHIBIT "K"**

## ARCH A. MOORE, JR.

GOVERNMENT AND BUSINESS CONSULTANT

HUBBS BUILDING, SUITE 400

511 SEVENTH STREET

MOUNDSVILLE, WEST VIRGINIA 26041

GOVERNOR OF THE
STATE OF WEST         1969-1977
VIRGINIA              1985-1989
—
UNITED STATES
CONGRESSMAN           1957-1969

TELEPHONE
304-845-5900
304 845 2609

FACSIMILE
304-845-5901

September 6, 2005

Dr. Muhammad Haroon Rashid
President and C.E.O.
Global Empire Investments & Holdings, LLC
5821 Southwest Freeway, Suite 500
Houston, TX 77057

Re: $200,000,000 loan to Progressive Minerals, LLC
    Hubbs Building, Suite 400 - 511 Seventh Street
    Moundsville, WV 26041

Dear Dr. Rashid:

I respectfully bring to your attention a document executed by you as President of Global Empire Investments & Holdings, LLC, and myself, Arch A. Moore, Jr., President of Progressive Minerals, LLC, a West Virginia Company, in reference to that certain Agreement executed on July 21, 2005, by the parties, in reference to the $200,000,000 loan by your Company to Progressive Minerals, LLC. This document was executed in a timely fashion on July 21, 2005, by each of the parties thereto, more particularly, Arch A. Moore, Jr., President of Progressive Minerals, LLC, and Dr. Mohammad Haroon Rashid, CEO of Global, all of which complied with the Commitment, Commitment Letter, or Commitment Agreement dated July 14, 2005.

All questions that have been presented to Progressive Minerals, LLC, from any source, to meet the need of Global, have been responded to promptly and completely. The concluding paragraph of this document is quite specific in direction, and manner of executing said document by its principals. In Item 14. Indemnification, it is specific in identifying the executed document as a "Commitment Letter".

Progressive Minerals feels it has responded to all questions posed over several months previous to the execution of the Commitment Letter, furnishing all information, or data required.

Dr. Muhammad Haroon Rashid
September 6, 2005
Page Two

On Page 3 of the executed Document, the closing date is set specifically for August 15, 2005, with a 25 million dollar advance deposited by Global to Progressive Minerals, with a specification that it's for the applicant to facilitate the acquisition of the project. That date has since gone by without comment or explanation by your Company, which has caused Progressive Minerals substantial embarrassment to the parties involved.

Progressive Minerals has been advised that circumstances affecting Global, have taken their attention away from this signed Commitment Letter, and the specifics contained therein, without any explanation, to Progressive Minerals, whatsoever. Progressive Minerals believes there is a existing contract between Global and Progressive Minerals that requires the parties to live by their agreement, and activate said loan.

Should your Company, for a minute, maintain they have no contractual obligation in this matter, Progressive and myself have very few avenues to examine, all of which would contemplate a legal action to seek specific performance of the executed Contract. I can assure you that this is not something I would prefer. However, without this matter being properly carried out, my Company and myself are left with few alternatives.

I respectfully call to your attention that the $750,000 that has been sent to you by Progressive, was certainly not all of the financial obligations incurred by my Company and myself in this matter, in relying upon the executed Contract between your Company and mine. As a matter of fact, my Company did issue a check for $500,000 to Justice Energy, to secure its rights to purchase its Red Fox Division, all of which is now lost to Progressive Minerals and myself. It would appear to me that Progressive has to be made whole in this matter, save a legal action is for Progressive to be made whole. I hasten to say Progressive doesn't desire this, but desires the Contract to be carried out in its entirety.

If by this letter, I, on behalf of my Company, seem to be demanding, I suggest that is not the case.

If for any reason you, or your Company, find yourself uncomfortable owning 45% of this with me, or my Company, my Company would be ready to compromise this matter in its entirety by the payment of $25,000,000 to my Company for its 55% interest, which would leave Global owning the entire project, which has projections indicating it will net $50,000,000 per year, over the next ten years. I hasten to say this is not my position or the position of my Company, but is tendered in good faith in order to settle this matter without any litigation.

Dr. Muhammad Harroon Rashid
September 6, 2005
Page Three

In that light, Progressive and myself, personally, respectfully ask that the agreed upon commitment be carried out, and that Global proceed immediately to honor said written Commitment Contract, reflecting its approval of said loan to Progressive Minerals, LLC, and to deposit $25,000,000 to the account of Progressive Minerals, LLC, with the balance to flow as set forth in our Agreement.

The tremendous respect Global Empire Investments & Hollings, LLC has obtained throughout this Country, and the admiration attached to its Chief Executive Officer, Dr. Mohammad Haroon Rashid, its President and CEO, is admirable indeed.

Therefore, Progressive Minerals, LLC, through its President, Arch A. Moore, Jr., respectfully demands that the parties carry out with great specificity, the Commitment Contract dated July 21, 2005, and that said 25 million dollar deposit be made now, to the account of Progressive Minerals, LLC, and said loan be activated.

The intent of this letter does not diminish in any way whatsoever, the solid reputation of Global and through its revered Chief Executive Officer, Dr. Mohammad Haroon Rashid, however Progressive Minerals, LLC, must be made whole, and Global Empire Investments & Holdings should immediately carry out its contractual commitment to Progressive Minerals, LLC.

Very truly yours,

Arch A. Moore, Jr.

The original of this letter is being sent to you, at your business address, by Federal Express.