IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PROGRESSIVE MINERALS LLC,

    Plaintiff,

v.                                           Civil Action No. 5:07CV108
                                                              (STAMP)

MUHAMMAD HAROON RASHID,
GERALD D. HENDRIX,
DAVID M. BERNSTEIN,
JOHN DOUGLAS REYNOLDS,
JOHN C. CROSBIE and
JUDE O'NURKERA,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS DAVID M. BERNSTEIN, JOHN DOUGLAS REYNOLDS
AND JOHN C. CROSBIE'S MOTION TO DISMISS,
GRANTING PLAINTIFF'S MOTION TO ENLARGE PAGE LIMITS,
DENYING PLAINTIFF'S OBJECTION AND MOTION TO STRIKE
AFFIDAVIT OF EDWARD C. KRAMER AS MOOT,
DENYING PLAINTIFF'S OBJECTION AND MOTION TO STRIKE
AFFIDAVIT OF MUHAMMAD HAROON RASHID AS MOOT
AND DENYING MOTION OF DEFENDANTS DAVID M. BERNSTEIN,
JOHN DOUGLAS REYNOLDS AND JOHN C. CROSBIE TO STRIKE
PLAINTIFF'S OBJECTIONS AND MOTIONS TO STRIKE AFFIDAVITS
OF MUHAMMAD HAROON RASHID AND EDWARD C. KRAMER AS MOOT**

I.  Procedural History

    Plaintiff, Progressive Minerals LLC, a West Virginia limited liability company with its principal place of business located in West Virginia, filed this action before this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332, asserting claims of fraud, negligent misrepresentation, conspiracy to defraud, and negligence against several alleged managing members of Global Empire Investments and Holdings LLC.  Defendants David M.

Bernstein, John Douglas Reynolds, and John C. Crosbie moved this Court to dismiss this action under Federal Rule of Civil Procedure Rule 12(b)(2). Additionally, each defendant attached an affidavit in support of dismissal.[1] The plaintiff responded to this motion to which the defendants replied. For the reasons set forth below, the defendants' motion to dismiss is granted in part as to John Douglas Reynolds and John C. Crosbie and denied in part as to David M. Bernstein.

## II. Facts

Progressive Minerals LLC ("Progressive") is a West Virginia company that was allegedly attempting to obtain $200 million in financing to acquire a coal mine in Bishop, McDowell County, West Virginia. Progressive's complaint is filed against several alleged managing members of Global Empire Investments and Holdings LLC ("Global"), including David M. Bernstein, John Douglas Reynolds, and John C. Crosbie (the "Canadian defendants"), all of whom Progressive alleges conspired to defraud Progressive out of a $750,000.00 loan commitment fee.

In its complaint, Progressive alleges that based on the fraudulent misrepresentations of several of the defendants, it entered into an agreement with Global for Global to fund

---

[1] In evaluating whether it has subject matter jurisdiction to hear a case, a district court may consider evidence outside the pleadings, including affidavits. See Robb v. United States, 80 F.3d 884 (4th Cir. 1996).

2

Progressive's acquisition of a mine in Bishop, West Virginia. Pursuant to this agreement, Progressive was required to pay Global $750,000.00 up front as a loan commitment fee. As part of this agreement, Global also executed a Corporate Guaranty providing that Global would refund the $750,000.00 loan commitment fee if said loan was not completed within 120 days after receipt of the fee.

After entering into the agreement and paying the loan commitment fee, Progressive spent $516,219.18 to secure its right to purchase Justice's Red Fox Coal Mine from Justice Energy, LLC. Progressive alleges that the success of acquiring this coal mine was completely dependent upon the acquisition of the mine in Bishop, West Virginia that Global agreed to finance.

Despite Progressive's tendering of the loan commitment fee, Progressive alleges that Global failed to process the $200 million loan or even refund the commitment fee. Instead, Progressive contends that Global merely created a "facade" of a "fictitious empire," misrepresenting its assets, holdings, and business history, and causing Progressive to lose in excess of $1.25 million as a result of its fraudulent scheme. In its complaint, Progressive asserts claims for fraud, negligent misrepresentation, conspiracy to defraud, and negligence.

In its motion to dismiss, the Canadian defendants state that they are not subject to personal jurisdiction in the state of West Virginia. In support of their contention, the Canadian defendants

each offer a declaration. In their reply brief, the Canadian defendants also offer declarations from Dr. Muhammad Haroon Rashid ("Dr. Rashid"), a defendant in this case and the founding chief executive officer of Global, and Edward C. Kramer, the Canadian defendants' attorney, both of whom state that the Canadian defendants were not involved in the loan agreement made between Progressive and Global.

### III. Applicable Law

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving the existence of the grounds for jurisdiction by a preponderance of the evidence. Owens-Illinois, Inc. v. Rapid Am. Corp., (In re The Celotex Corp.), 124 F.3d 619, 628 (4th Cir. 1997) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

Under a "long-arm" statute, such as West Virginia Code § 56-3-33,[2] a state may enable its courts to exercise personal

---

[2]Section 56-3-33 states, in pertinent part:

(a) The engaging by a nonresident, or by his duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the secretary of state, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state . . . for a cause of action

4

jurisdiction over non-residents that commit certain acts within the state, or certain acts outside of the state, that have caused injury within the state. See Lozinski v. Lozinski, 408 S.E.2d 310, 315 (W. Va. 1991) ("The intent and benefit of any long-arm statute is to permit the secretary of state to accept process on behalf of a nonresident and to view such substituted acceptance as conferring personal jurisdiction over the nonresident."). Because the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal

---

> arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:
>
> > (1) Transacting any business in this state;
> > (2) Contracting to supply services or things in this state;
> > . . .
> > (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (b) When jurisdiction over a nonresident is based solely upon the provisions of this section, <u>only a cause of action arising from or growing out of one or more of the acts specified in subdivisions (1) through (7), subsection (a) of this section may be asserted against him or her</u>.

W. Va. Code § 56-3-33 (emphasis added).

5

two-step formula for determining the existence of personal jurisdiction. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997). Instead, the "statutory inquiry merges with the Constitutional injury," and this Court must determine whether exercising personal jurisdiction is consistent with the due process clause. Id. at 628; see World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

Due process requires that a defendant receive adequate notice of the suit and be subject to the personal jurisdiction of the court. Id. (citations omitted). The exercise of personal jurisdiction over a non-resident defendant is proper only so long as "minimum contacts" exist between the defendant and the forum state, "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The requisite minimum contacts must exist due to conduct by the defendant by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). By requiring that a defendant "purposefully avails" itself of the privilege of conducting activities within the forum State, it ensures that "a defendant

will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. (internal citations omitted). Rather, the defendant's conduct in relation to the forum state must be "such that [it] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp., 444 U.S. at 297.

Once a court finds that a defendant has "purposely availed" himself of the forum state so that he has established sufficient minimum contacts with that state, a court must then consider whether asserting personal jurisdiction over the defendant will offend "traditional notions of fair play and substantial justice." See Int'l Shoe Co., 326 U.S. at 316. The United States Supreme Court has noted several factors to consider when making this determination. Those factors include: "the burden on the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several states in furthering fundamental substantial social policies." Burger King Corp., 471 U.S. at 477 (quoting World-Wide Volkswagen Corp., 444 U.S. at 292).

IV. Discussion

Before this Court makes its ruling on the issue of personal jurisdiction, this Court must first resolve a few outstanding motions. In filing its response to the Canadian defendants' motion to dismiss, Progressive also filed a motion for leave to file its response in excess of the page limitations mandated under Rule 7.02 of the Local Rules.[3] For good cause shown, Progressive's motion to enlarge page limits to file a forty-five page responsive memorandum, excluding exhibits, is granted.

Progressive also filed objections and motions to strike the affidavits of Dr. Rashid and Edward C. Kramer. Progressive argues that Dr. Rashid's affidavit is not competent evidence, and that Mr. Kramer's affidavit is not based on personal knowledge, contains impermissible hearsay statements, and includes conclusory statements, improper legal conclusions, and general opinions. In response to these objections and motions, the Canadian defendants then filed their own motion to strike Progressive's objections and motions to strike the two affidavits. Because this Court did not rely on the evidence contained in the affidavits of Dr. Rashid and Mr. Kramer in reaching its decision, Progressive's objections and motions to strike, as well as the Canadian defendants' motion to strike, are all denied as moot.

---

[3]Local Rule 7.02 requires that a party may not exceed twenty-five pages when filing a memorandum of law in response to a motion.

A.   Personal Jurisdiction

This Court now addresses the dispositive issue in this case, that being whether the state of West Virginia has personal jurisdiction over the Canadian defendants. The Canadian defendants argue that none of them had any contacts with the state of West Virginia to satisfy the minimum contacts requirement under the due process clause. In turn, Progressive argues that David M. Bernstein, John Douglas Reynolds, and John C. Crosbie were all members of Global's corporate structure and took part in the alleged fraud against Progressive.

1.   David M. Bernstein

In his declaration submitted in support of the motion to dismiss, Mr. Bernstein states that he has had no contact with the state of West Virginia, or initiated any other involvement that would allow this Court to exercise personal jurisdiction over him. Progressive advances several reasons that this Court has jurisdiction over Mr. Bernstein, including the fact that Mr. Bernstein sent a facsimile to Arch A. Moore, Jr. ("Governor Moore"), president of Progressive, in West Virginia on January 13, 2006. This Court agrees with Progressive that this Court has personal jurisdiction over Mr. Bernstein.

Mr. Bernstein's declaration is replete with statements concerning his complete disassociation with the state of West Virginia and Global's alleged fraudulent scheme. He states that he

9

is a Canadian national and a citizen and resident of the Province of Quebec. He mentions that he has never engaged in business in West Virginia, nor visited West Virginia. He asserts that he is not a shareholder of Global and has never held either an officer or director position with Global. The only association that Mr. Bernstein admits that he had with Global is that he formerly served as the Canadian representative of the Canadian affiliate of Global. While acting within this capacity, Mr. Bernstein admits that on October 10, 2005, he examined documents provided to Global from Progressive and drafted a letter to Progressive concerning a list of due diligence items. (Defs.' Br. Mot. Dismiss Ex. B.) Mr. Bernstein claims that he had no further involvement with either Global or Progressive.

Based on the facts presented in Mr. Bernstein's declaration alone, it appears that this Court would not have personal jurisdiction over Mr. Bernstein. The only letter discussed by Mr. Bernstein in his declaration cannot satisfy the minimum contacts requirement. Although Mr. Bernstein did draft a letter ("Houston letter") on Global letterhead to be sent to Governor Moore in Moundsville, West Virginia, on October 10, 2005, this letter was ultimately given to Governor Moore at a meeting in Houston, Texas.

Rather, it is what Mr. Bernstein fails to include in his declaration that satisfies the minimum contacts requirement of the due process clause and gives this Court personal jurisdiction over

him.  On January 13, 2008, Mr. Bernstein, again, wrote a letter to Governor Moore on Global letterhead regarding "Progressive Minerals and Global Empire."  The letter states, "I will be in touch with you by the end of the next week to settle this matter with you." (Pl.'s Resp. Mot. Dismiss Ex. N.)  Unlike the Houston letter, however, this letter was faxed to Governor Moore in West Virginia, as part of the business engagement between Global and Progressive. See State of N.C. ex rel. Long v. Alexander & Alexander, 680 F. Supp. 746 (E.D.N.C. 1988) ("Business contacts in the form of letters, telephone calls, and personal visits are significant enough to give defendants the reasonable expectation of being called into court" and confer personal jurisdiction.).  This letter is enough to find that Mr. Bernstein purposely availed himself of the privilege of conducting activities within the state of West Virginia.  Burger King Corp., 471 U.S. at 475.  Accordingly, this Court concludes that the West Virginia long-arm statute does confer personal jurisdiction in this action as to Mr. Bernstein and that the exercise of personal jurisdiction does not violate the due process clause of the United States Constitution.  Accordingly, this Court finds that the defendant's motion to dismiss for lack of personal jurisdiction as to Mr. Bernstein is denied.

    2.   John Douglas Reynolds and John C. Crosbie

Similarly to Mr. Bernstein, John Douglas Reynolds and John C. Crosbie submitted declarations in support of the motion to dismiss,

both claiming a complete disconnect with Global and the state of West Virginia. Progressive argues that Mr. Reynolds and Mr. Crosbie "deliberately reached out beyond their home provinces and purposefully established 'minimum contacts' with West Virginia," essentially because "[t]heir actions or inactions allowed Global Empire to induce Progressive to enter into contracts which the conspirators knew Global would never perform." (Pl.'s Resp. Mot. Dismiss 30.)

Mr. Reynolds' declaration contains similar statements to those found in Mr. Bernstein's declaration. Mr. Reynolds claims that he is a Canadian national and a citizen and resident of the Province of British Columbia. He is currently a member of the Canadian Privy Counsel. He states that he has never engaged in business in West Virginia or visited West Virginia at any time. Mr. Reynolds claims that he has never been a shareholder, officer, director, employee, agent, advisor, or consultant to Global. He does admit that he met with Dr. Rashid in Houston, Texas, several years ago but that no business connection was ever made.

Mr. Crosbie's declaration includes more of the same statements. He is a Canadian national and a citizen and resident of the Province of Newfoundland and Labrador. He currently serves as the Chancellor of Memorial University of Newfoundland and a counsel to the law firm of Cox & Palmer. Mr. Crosbie alleges that he has neither engaged in business in West Virginia, nor ever

visited West Virginia. He claims that he has never been a shareholder, officer, director, employee, agent, advisor, or consultant of Global. He, too, admits that he met with Dr. Rashid several years ago in Houston, Texas, but that no business connection was ever established. Mr. Crosbie also recounts that he received a letter dated October 10, 2006, from David W. Parham of Baker & MacKenzie LLP, counsel for Progressive in this case, containing a complaint and accompanying attachments. Mr. Crosbie admits that he replied to this letter on October 27, 2006.

Progressive argues that because both Mr. Reynolds and Mr. Crosbie were directors of Global, or pretended to be, through various marketing materials, "Crosbie and Reynolds lent their names and stature to this sham," becoming "key players in the Global Empire enterprise." (Pl.'s Resp. Mot. Dismiss 33.) Specifically, Progressive claims that both Mr. Reynolds and Mr. Crosbie acted "with the intent of causing damage to misinformed entities that chose to do business with Global Empire . . . Progressive was one such entity and the effect of Crosbie and Reynolds [sic] conduct was severe damage in West Virginia." (Pl.'s Resp. Mot. Dismiss 33.) Thus, Progressive contends that jurisdiction is proper over Mr. Reynolds and Mr. Crosbie for these reasons.

This Court's analysis begins with the premise that "[p]ersonal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal

13

jurisdiction over the corporation." Harte-Hanks Direct Mktg./ Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc., 299 F. Supp. 2d 505, 513 (D. Md. 2004). Rather, "[p]ersonal jurisdiction must be based on an individual's personal contacts with or purposeful availment of the forum state." Id. Therefore, the Fourth Circuit has recognized the following:

> A federal court may not exercise personal jurisdiction over a corporation's agent if the agent's only connection to the forum state is an officer or employee of a non-resident corporation that committed a tort in the state, and if the agent's own involvement in that tort occurred outside of the forum state.

Id. (citing Columbia Briargate Co. v. First Nat'l Bank in Dallas, 713 F.2d 1052, 1060-61 (4th Cir. 1983)). But see Pittsburgh Terminal Corp. v. Mid Allegheny Corp., 831 F.2d 522, 528 (4th Cir. 1987) (holding that a state can exercise personal jurisdiction over non-resident directors of domestic, in-state corporations).

In light of this well-established law, Progressive's argument that this Court has personal jurisdiction over Mr. Reynolds and Mr. Crosbie because they were directors of Global must fail unless Progressive proves by a preponderance of the evidence that each defendant had individual minimum contacts with the state of West Virginia. Progressive has not met this burden. Progressive offers no evidence that either defendant engaged in business in West Virginia or took any part in the alleged fraudulent scam that effected Progressive in West Virginia. Broad assumptions that Mr. Reynolds and Mr. Crosbie took part in the alleged scam because they

either were, or allowed their names to appear as, directors of Global is not sufficient proof of minimum contacts that confers personal jurisdiction upon this Court.

Furthermore, the letter that Mr. Crosbie wrote to Progressive's counsel, Mr. Parham, does not establish minimum contacts with the state of West Virginia. Mr. Parham's office is located in Dallas, Texas, and it is to that location that Mr. Crosbie mailed his correspondence. (Defs.' Br. Mot. Dismiss Ex. C.) Furthermore, Mr. Crosbie's letter is written on October 27, 2006, after the conclusion of all of the facts that form the basis of the complaint. Instead, Mr. Crosbie's letter only addresses his lack of connection with the events contained in the complaint and advises that he will retain counsel if Progressive takes action against him. (Defs.' Br. Mot. Dismiss Ex. C.) A letter written after the facts that give rise to the claim is not sufficient to form minimum contacts with the forum state. See August v. HBA Life Ins. Co., 734 F.2d 168, 174 (4th Cir. 1984) (holding that because the plaintiffs did not receive any correspondence until after the events giving rise to their claim, that these "cannot be considered as contacts for the purpose of establishing jurisdiction over the claim").

Additionally, this Court finds that subjecting Mr. Reynolds and Mr. Crosbie to personal jurisdiction in West Virginia is unduly burdensome and offends notions of "fair play and substantial

15

justice." Accordingly, this Court finds that Progressive cannot assert personal jurisdiction over Mr. Reynolds or Mr. Crosbie under either the long-arm statute or the dictates of due process, that these defendants are thereby dismissed from this action, and that the Canadian defendants' motion to dismiss is granted as to John Douglas Reynolds and John C. Crosbie. Nevertheless, a dismissal for lack of personal jurisdiction is not considered an adjudication on the merits and therefore does not warrant dismissal with prejudice. 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 4436, at 168-70 (2d ed. 1990). Consequently, this Court will dismiss Mr. Reynolds and Mr. Crosbie without prejudice for Progressive to refile its claim against these two defendants in a different forum.

B. Rule 11 Sanctions

In their motion to dismiss, the Canadian defendants also seek sanctions including attorneys' fees and costs in the defense of this action pursuant to Rule 11 of the Federal Rules of Civil Procedure, claiming that Progressive has filed this lawsuit against high-profile Canadian officials merely to extort a settlement. The facts do not support any finding that Rule 11 sanctions are warranted in this case. Rather, the facts show that prior to filing this lawsuit, counsel for Progressive contacted each of the defendants named in the lawsuit and notified them that if the loan commitment fee and additional amounts paid to Justice Energy, LLC

to purchase the Red Fox Coal Mine in reliance on the loan agreement with Global were not refunded, that Progressive would pursue the claims in a court of a law. Only after Progressive failed to receive any sort of reimbursement or refund of the approximately $1.25 million did they file this action. Accordingly, this is not an appropriate case for Rule 11 sanctions.

## IV. Conclusion

For the reasons stated above, the motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is hereby GRANTED IN PART and DENIED IN PART. To the extent that the motion seeks dismissal of defendants John Douglas Reynolds and John C. Crosbie from this civil action, the motion is GRANTED. Because this Court has found that it maintains personal jurisdiction over defendant David M. Bernstein, the motion to dismiss to the extent that it seeks dismissal of David M. Bernstein is DENIED. Progressive's motion for leave to enlarge page limits in its response to the Canadian defendants' motion to dismiss is GRANTED. Finally, because this Court did not rely upon any statements contained in the affidavits of Dr. Rashid or Mr. Kramer, Progressive's objections and motions to strike, as well as the Canadian defendants' motion to strike, are all DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: September 24, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE